IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE BATISTA, | : |
| | : |
| Plaintiff | : |
| | : CIVIL NO. 1:CV-15-1805 |
| vs. | : |
| | : (Judge Caldwell) |
| J. A. ECKARD, *et al.*, | : |
| | : |
| Defendants | : |

*M E M O R A N D U M*

I.  *Introduction*

Jose Batista, a state inmate confined at the State Correctional Institution in Huntingdon, Pennsylvania, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, arising from staff's alleged interference with his medical care and his receipt of a retaliatory misconduct.  Presently before the court is Batista's motion for appointment of counsel (Doc. 3) and Motion for Separation (Doc. 14).  For the following reasons, both motions will be denied.

II.  *Background*

Plaintiff alleges the following.  In May/June 2015, Batista underwent kidney stone surgery at an outside hospital. (Doc. 1, Compl., ¶ 11).  He later developed bronchitis and was prescribed breathing treatments and medication by Dr. Kollman.  His breathing treatments were to take place four times a day (0700, 1100, 1500 and 1800

-1-

hours) for a period of one week.  (*Id.*, ¶ 13).  Batista had his first breathing treatment before leaving the medical unit the morning on June 16, 2015.  (*Id.*, ¶ 14).  Batista returned to the medical unit at 1100 for his next treatment.  (*Id.*)

At 1500 hours, Sergeant (Sgt.) Williams would not permit Batista to leave the block to attend his medical appointment because his name was not on the call-out sheet which outlines the daily destinations, or movements, of inmates within the facility.  (*Id.* ¶ 15).  Batista returned to the Sergeant's desk, where Correctional Officer (CO) Clark was located, and unsuccessfully searched for a pass with his name on it.  (*Id.* ¶ 16).  Sgt. Williams ordered Batista to return to his cell after refusing to write a medical pass for him.  Around 1800 hours Batista again approached Sgt. Williams requesting a pass to go to the medical unit.  (*Id.* ¶ 17).  Although Plaintiff was complaining that he was not feeling well and needed a breathing treatment, Sgt. Williams denied Batista's request for a medical pass.  (*Id.*)

The following day, although there was no pass authored by the medical unit requesting Batista's appearance for his 0700 and 1100 hours breathing treatments, CO Forston granted Batista's verbal request to go to the medical unit.  (*Id.* ¶ 18).  Due to the absence of a medical pass, Sgt. Williams refused to allow Batista to go to the medical unit at 1500 hours.  (*Id.* ¶ 19).  That day, June 17, 2015, during dinner, Batista advised Lt. Dunkle that he felt Sgt. Williams was intentionally interfering with his medical treatment.  (*Id.* ¶ 20).  Lt. Dunkle telephoned the medical unit and spoke with a nurse who reported that she would call Batista's housing unit and advise Sgt. Williams of Batista's need to attend the medical unit for treatment.  (*Id.* ¶ 21).  At 1800 hours, Batista approached Sgt. Williams and requested leave to go to the medical unit.  Even after advising Sgt. Williams

that he spoke to Lt. Dunkle about this matter, Sgt. Williams denied Batista's request and advised him not to ask again or he would receive a misconduct report.  (*Id.* ¶¶ 22 - 23). CO Clark was present during Batista's interactions with Sgt. Williams.   (*Id.* ¶ 24).

On July 1, 2015, Sgt. Williams issued Batista a false misconduct for refusing to obey a direct order, presence in an unauthorized area, and use of abusive language against a staff member.  (*Id.* ¶ 25).  Batista claims Sgt. Williams issued the misconduct in retaliation for Batista's filing of a grievance against him.  (*Id.*)  As a result of his misconduct sanction, Batista was placed in "solitary confinement," from July 1, 2015, until August 26, 2015, where he became depressed and lost weight.  The prison psychiatrists changed and increased his psychotropic medication to help him cope with his depression while in "solitary confinement."  (*Id.* ¶ 26 and ¶ 28).  Batista also lost his prison job and was "removed and deprived from pursuing a proper education, computer classes with Mr. Radie, and GED classes with Mr. Martin" as misconduct sanctions.  (*Id.* ¶ 27).  While in "solitary confinement" Batista was seen several times by Physician Assistants (PA) McConnel and Gomes.  (*Id.*)  At one point Batista suffered an allergic reaction to an antibiotic he was given.  The "solitary confinement" officer "rushed" Batista directly to the medical unit where he was treated for the reaction.  (*Id.* ¶ 29).  After receiving additional treatment, during the last week of August 2015, Batista "finally started feeling much better physically, emotionally, mentally, and spiritually."  (*Id.* ¶ 30).

Named as defendants are the following individuals who are employed by SCI-Huntingdon or the contract medical care provider at the facility: Superintendent Eckard; Unit Manager K. Granlund; Sgt. Williams; Dr. Kollman; PA McConnel; and PA Gomes.  As relief, Batista seeks an injunction requiring defendants to cease their

deliberate indifference to his serious medical needs, all retaliatory acts and violations of his civil rights. He also seeks compensatory and punitive damages. (*Id.* ¶¶ 36 - 43).

The court has recently screened his Complaint and directed service on the defendants.

III.    *Discussion*

   A.    *Motion for Appointment of Counsel* (Doc. 3)

This is a civil action, not a criminal one. Hence the plaintiff has no constitutional or statutory right to appointed counsel. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002). Nor can the court compel a lawyer to represent an indigent plaintiff. *Tabron v. Grace*, 6 F.3d 147, 153 n.1 (3d Cir. 1993). Rather, representation for an indigent is governed by 28 U.S.C. § 1915(e)(1) which only provides that the court "may *request* an attorney to represent any person unable to afford counsel." (emphasis added).

A district court has broad discretion under 28 U.S.C. § 1915(e)(1) in deciding whether to seek counsel, *Montgomery,* 294 F.3d at 498, and the decision can be made at any point of the litigation. *Id.* at 503-04 ("Either the Magistrate Judge or the District Court should have recognized Montgomery's difficulties as they became increasingly apparent and, in light of them, reconsidered Montgomery's motion for appointment of counsel.").

The Third Circuit has provided guidance for the exercise of the district court's discretion. At the threshold, the court must decide whether the plaintiff's case "has some arguable merit in fact and law." *Id.* at 499 (quoting *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997)). A court need not appoint counsel "if the indigent's chances of

success on the merits are extremely slim." *Id.* at 500 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986))(internal quotation marks and brackets omitted).  If the threshold requirement is met, the court then considers a number of factors established by the Third Circuit to determine whether it is appropriate to request counsel for an indigent party.  These factors include: (1) the plaintiff's ability to present his own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.  *Tabron*, 6 F.3d at 155-57.

"[V]olunteer lawyer time is a precious commodity, *Montgomery, supra,* 294 F.3d at 499, so the district court's "broad statutory discretion" should be exercised "discerningly."  *Id.* at 505 n.10.  However, if the case "appears to have merit" and "most of the . . . *Tabron* factors have been met, the Third Circuit "instruct[s]" that the district court "should make every attempt to obtain counsel."  *Id.* at 505 (quoting *Parham*, 126 F.3d at 461)(internal quotation marks omitted).

This case has just started.  As noted above, the court just recently screened Batista's Complaint and directed its service on the defendants.  Defendants will either file an answer or other response to the Complaint.  Until then, the court is not able to fully assess the threshold question of the arguable fact and legal merit of Plaintiff's claims for the purpose of appointing him counsel.  While he states he "lack[s] of understanding in the English language" sufficient to prepare his own legal defense, his filings indicate otherwise.  (Doc. 3, Mot. Appointment of Counsel).  We note that to date, Batista's

submissions and correspondence with the court have been either typed or clearly printed. His filings are well thought out, logically presented and demonstrated clarity of thought in their presentation as well as his use of the English language.  Batista attaches to his Complaint a series of correspondence between himself and prison officials.  *See* Doc. 1-1, Compl. Exs.  These documents also reflect Batista's clarity in thought and command of the English language.  To the extent Batista's request for counsel is premised on the fact of his incarceration or his indigent status, these facts do ont warrant the appointment of counsel given this court's liberal construction of *pro se* pleadings.  *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).  There is no evidence, at this early point in the litigation, that any prejudice will befall Batista in the absence of court-appointed counsel.  Consequently, at this time, Batista's request for counsel will be denied.

      B.    *Motion for Order of Separation* (Doc.14)

By a letter dated September 25, 2015, Batista notified the court of his temporary transfer to SCI-Graterford.  He believes he is there for the purpose of a medical or mental-health evaluation but is uncertain.  (Doc. 14).  Batista asks the court in his letter to enter an "order of separation between [himself] and SCI-Huntingdon prison officials." (*Id.*)  He cites fears for his safety and health and states he "cannot afford to be physically hurt by them."  (*Id.*)  Although Batista has only been at SCI-Graterford for one day, and has not spoken to any prison officials as to the reason for his transfer, he claims to be doing everything possible to remain there rather than return to SCI-Huntingdon.  (*Id.*) While previously housed at SCI-Graterford "from 2006 to September 6, 2010," he maintained a prison job, was content with his medical treatment, and never was placed in

solitary confinement. (*Id.*) He also notes that SCI-Hungtindon is full of rival gangs that constantly war with each other. (*Id.*) Finally, he states that he does not feel welcomed at SCI-Huntingdon due to past interaction with staff and gang rivalries. (*Id.*) Batista attaches copies of his request to various SCI-Graterford staff members seeking permanent housing at the facility rather than his return to SCI-Huntingdon. (*Id.*, ECF pp. 3 - 4).

The Supreme Court has observed that a preliminary injunction motion must seek relief of the "same character as that which may be granted finally." *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220, 65 S.Ct. 1130, 1134, 89 L.Ed. 1566 (1945); *see also Jones v. Sec'y Pa. Dep't of Corr.*, 589 F. App'x 591 (3d Cir. 2014). Thus, a court may not enjoin conduct relating to "a matter lying wholly outside the issues in the suit." *Id.* In his Complaint, Batista does not assert a failure-to-protect claim, or any facts that could be construed as such. Yet, in his letter-motion, he claims to fear for his safety from SCI-Huntingdon prison staff and prison gangs. He does not cite to any specific threats by prison staff, other than the one alleged retaliatory misconduct issued by Sgt. Williams. He does argue that he has been threatened by other inmates, and that If threatened, he advised prison officials, who ignored his concerns. Accordingly, the requested relief is not related to the underlying claims in his Complaint. To the extent Batista wishes to bring a failure-to-protect claim for his transfer, he may do so by filing a

separate action after properly exhausting his administrative remedies as to his claim.[1]

An appropriate order follows.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date:  November 5, 2015

---

[1] We note that Batista returned to SCI-Huntingdon on October 27, 2015.  *See* Doc. 16, Change of Address.