IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSÉ BATISTA, | : |
| Plaintiff | : |
| vs. | : CIVIL NO. 1:CV-15-1805 |
| | : (Judge Caldwell) |
| J. A. ECKARD, *et al.*, | : |
| Defendants | : |

*M E M O R A N D U M*

I.   *Introduction*

The pro se plaintiff, José Batista, an inmate at the Huntingdon State Correctional Institution (SCI-Huntingdon), in Huntingdon, Pennsylvania, filed this civil-rights lawsuit. Plaintiff alleges the defendants were deliberately indifferent to his medical needs and Sgt. Williams issued him a false and retaliatory misconduct. (Doc. 1, Compl.) Named as defendants are the following Department of Corrections (DOC) employees: Superintendent J. A. Eckard; Unit Manager K. Grandlund; and Sergeant (Sgt.) K. Williams. Also named as defendants are three individuals employed by the medical group contracted by the DOC to provide medical services to inmates at SCI-Huntingdon: Dr. Kevin Kollman; Physician Assistant (PA) Mark McConnell; and PA Michael Gomes.[1]

---

[1] The DOC and Medical Defendants are represented by separate counsel.

Presently before the court is the Medical Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[2] (Doc. 47, Mot. to Dismiss). The Medical Defendants argue that: (1) Batista fails to state a claim against them; and (2) Batista failed to exhaust his administrative remedies on his claim against them. (Doc. 48, Br. in Supp. Mot. to Dismiss).

For the reasons discussed below, the court will grant the Medical Defendants' motion to dismiss the Complaint based on Batista's failure to exhaust his available administrative remedies.[3]

II. *Standard of Review*

A motion to dismiss under Fed. R. Civ. P 12(b)(6) authorizes the dismissal of a complaint "for failure to state a claim upon which relief can be granted." Under Fed. R. Civ. P. 12(b)(6), the district court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff is entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). The court may also rely on exhibits attached to the complaint and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

---

[2] The DOC Defendants Answered the Complaint on February 5, 2016. *See* Doc. 51.

[3] Because the court disposes of Batista's claims against the Medical Defendants on the basis of exhaustion, we need not address the Medical Defendants' alternative arguments for dismissal.

Pursuant to Fed. R. Civ. P. 8(a), a complaint need only "include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." "[T]he factual allegations of a complaint 'must be enough to raise a right to relief above the speculative level' and the complaining party must offer 'more than labels and conclusions' or 'formulaic recitation of the elements of a cause of action.'" *W. Run Student Hous. Assocs., LLC. v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). Legal conclusions are "not entitled to the assumption of truth." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

Additionally, pro se pleadings must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 - 21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). Pro se litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff

-3-

has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

With this standard in mind, the following is the background to this litigation, as Plaintiff alleges it.

III. *Background*

Batista filed his Complaint on September 11, 2015. (Doc. 1, Compl.) On Tuesday, June 16, 2015, Batista saw Dr. Kollman for complaints of Bronchitis developed secondary to recent kidney stone surgery. (*Id.*, ¶ 11). Dr. Kollman prescribed breathing treatments and "other meds" to help alleviate Batista's chest discomfort, headaches and chronic cough that were interfering with his everyday lifestyle. (*Id.*, ¶ 12). Dr. Kollman ordered that Batista receive breathing treatments four times a day for a period of one week. Dr. Kollman advised Batista that he was "allowed to come down, 'at 0700, 1100, 1500, and 1800 hours' daily to receive his breathing treatments." (*Id.*, ¶ 13). Batista received his first breathing treatment around 0930 that morning following his appointment with Dr. Kollman. (*Id.*, ¶ 14). While Batista claims CO Fortson, a non-defendant, signed a pass for his return to the medical unit for his second breathing treatment of the day (*Id.*), he also submits documents that reflect that prison officials noted that he failed to appear for his 1100 treatment. (Doc. 1-1, ECF p. 9). Batista did not receive his 1530 or 1800 hours breathing treatments. (*Id.*)

Batista did not receive his 1530 or 1800 hours breathing treatments on June 16, 2015, because Sgt. Williams, the second shift commander of his housing unit, refused

-4-

to issue him a pass that would allow him to go to the medical area because his name did not appear on the "call-out sheet."  Sgt. Williams ordered Batista to return to his cell.  (Doc. 1, ¶ 15-¶ 17).

The following day, CO Fortson allowed Batista to go to the medical unit at 0700 and 1100 hours for his breathing treatments. (*Id.*, ¶ 18).  Batista's medical records reflect he received both his 0730 and 1130 breathing treatments on June 17, 2015.  (Doc. 1-1, ECF p. 9).

Batista claims that at approximately 1500 hours he approached Sgt. Williams "to verbally resolve the problem with [his] medical need," but Sgt. Williams refused to address the issue and ordered him back to his cell.  (*Id.*, ¶ 19).  Yet, prison officials report that Batista received his third breathing treatment that day.  (Doc. 1-1, ECF p. 9).

At approximately 1630 hours, while in the dinner hall, Batista approached Lt. Dunkle (non-defendant) and complained that Sgt. Williams "was intentionally interfering with [his] breathing treatments, because he was refusing to send [Batista] to the medical area to receive [his] breathing treatment in several occasions." (Doc. 1, ¶ 20).  Lt. Dunkle told he would look into the matter.  (*Id.*, ¶ 21).  Before Batista left the dining hall Lt. Dunkle later told him that an unidentified nurse confirmed that she would "call the unit" that Sgt. Williams operated and "inform him that he must let [Batista] come down to the medical area to receive [his] breathing treatment because it was ordered by the doctor." (*Id.*)

Around 1800 hours, Batista approached Sgt. Williams.  (*Id.*, ¶ 22).  Even though Batista stated he did not feel well, he was not issued a medical pass.  Sgt. Williams

-5-

told him "no" and that if he "asked him one more time, that he was going to write [Batista] up, serve [him] with a misconduct report" and then ordered him to return to his cell. (*Id.*) Sgt. Williams was not interested in Batista's conversation with Lt. Dunkle. (*Id.*, ¶ 23). CO Clark was present for this verbal exchange. (*Id.*, ¶ 24).

Two weeks later, on July 1, 2015, Sgt. Williams issued Batista a false misconduct for breaking institutional rules, disobeying a direct order, presence in an unauthorized area, and using abusive language against a staff member. (*Id.*, ¶ 25). Batista believes the misconduct was issued in retaliation for a grievance he filed against Sgt. Williams. (*Id.*, ¶ 25).

Batista was eventually placed in the Restricted Housing Unit (RHU) "against [his] own will." (*Id.*, ¶ 26). There his health deteriorated and he lost twelve pounds. His psychotropic medication was increased by his treating psychiatrist due to his deepening depression. (*Id.*)  In addition to being placed in the RHU, Hearing Examiner Himes (non-defendant) ordered Batista removed from his prison job assignment. He was also removed from his computer and GED classes as a consequences of his RHU placement. (*Id.*, ¶ 27).

Batista remained in the RHU from July 1, 2015, through August 26, 2015. (*Id.*, ¶ 28). During his RHU stay he "was seen several times" by PA McConnell and PA Gomes "due to an ongoing problem and complications of the pulmonary infection" which required further medical treatment. (*Id.*) Batista received additional breathing treatments and medication. (*Id.*, ¶ 29). Batista experienced an allergic reaction to one of the medications. (*Id.*) Consequently, he was "rushed" out of the RHU and "straight to the

medical department" where he was given medication to ameliorate the allergic reaction. He "was placed under further treatment" until the end of August 2015 when he started feeling mentally, emotionally, and spiritually much better. (*Id.*, ¶ 30).

Batista filed grievance 572324 on June 17, 2015. *See* Doc. 1-1, ECF pp. 1-2. He claimed that Sgt. Williams intentionally interfered with his medical treatment by not permitting him to go to the medical area for his prescribed breathing treatments. As relief he asks that Sgt. Williams, if "found responsible for any wrong doing based on any violations in regard of my medical rights, he should be held accountable". (*Id.*) Prior to receiving his response, Batista wrote to the Grievance Coordinator, Ms. Green, requesting information about grievance 572324 "that [he] filed ... against Sgt. Williams". (*Id.*, ECF p. 14). Unit Manager K. Granlund denied the grievance as frivolous on July 9, 2015. (*Id.*, ECF p. 3).

Batista appealed the decision to the Facility Manager, Supt. Eckard. (*Id.*, ECF pp. 4 - 5). He argued Unit Manager Granlund failed to properly investigate his grievance because he did not contact the medical unit to verify his claims. He requested that Supt. Eckard review video recordings from his housing units on those days which would have captured his conversations with Sgt. Williams and "prove who's telling the truth." (*Id.*)

On July 17, 2015, Plaintiff sent a request slip to Supt. Eckard, requesting the status of his appeal "against Sgt. Williams for intentionally interfering with access to prescribed" breathing treatments. (*Id.*, ECF p. 15). Supt. Eckard responded to the appeal

-7-

on July 30, 2015.  (*Id.*, ECF p. 6).  On August 1, 2015, Batista filed an appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  (*Id.*, ECF pp. 7-8).  On August 25, 2015, Dorina Varner, the DOC's Chief Grievance Officer upheld Unit Manager Granlund's response to the grievance.  (*Id.*, ECF p. 9).

On June 17, 2015, Plaintiff sent an inmate request slip to Deputy Moore concerning Sgt. Williams "interfering with [his] medical needs."  (*Id.*, ECF p. 10).  On August 12, 2015, Batista sent an inmate request slip to "Ms. Cousins" concerning his fears of future retaliation if returned to his former housing unit where Sgt. Williams works upon his release from the RHU.  He requested to be placed on a different housing unit.  After reviewing his request, Ms. Cousins advised that "psychiatry is not able to reclassify an inmate to another housing unit" but when he is released from the RHU he should contact her.  (*Id.*, ECF p. 11).  He sent a similar request to the RHU Program Review Committee on August 12, 2015.  (*Id.*, ECF p. 16).  On August 26, 2015, upon his release from the RHU, Plaintiff sent another request slip to "Ms. Cousins."  (*Id.*, ECF p. 12).  He claimed that because Sgt. Williams and CO Verbitskey (non-defendant) fabricated false misconduct charges against him in July 2015, he was fearful of further conflict with these officers if returned to his old unit.  (*Id.*)

On August 18, 2015, Batista sent PA McConnell an inmate request slip that the previous day, while in the RHU, he requested a breathing treatment from "Ms. Holly" because of chest discomfort.  Although she told him she was "going to provide it, but she

didn't call for [him] at all." (*Id.*, ECF p. 13).  He compared "Ms. Holly's" actions to those of Sgt. Williams' who "intentionally interfered with [his] breathing treatments."  (*Id.*)

Batista alleges all of the defendants were deliberately indifferent to his serious medical needs.  (Doc. 1, ECF p. 10).  He also claims Sgt. Williams issued him a false misconduct in retaliation for exercising his First Amendment rights.  (*Id.*, ECF p. 11).  He seeks a "primary and permanent" injunction ordering defendants "to cease their deliberate indifference towards" his serious medical needs.  (Doc. 1-1, ECF p. 9).[4]  He also seeks compensatory and punitive damages.  (Doc. 1, ECF p. 10).

IV.   *Discussion*

The Medical Defendants (Kollman, Gomes and McConnell) argue that Batista:  (1) failed to exhaust his available administrative remedies concerning their alleged deliberate indifferent to his serious medical needs between June 16 - August 26, 2015; and (2) fails to state an Eighth Amendment claim against them due to their lack of personal involvement and/or prescribed care.  (Doc. 48, Br. in Supp. Mot. to Dismiss).  Batista argues that grievance 572324, which was properly and completely exhausted to final review, "pertains to the medical defendants involvement in his grievance and complaint since the matter involved the treatment for his pulmonary infection, besides the intentionally interference by Sergeant K. Williams, and there was no need to file two separated grievances since the Defendants were part of it."  (Doc. 58, ECF p. 3).  As to his Eighth

---

[4]   As of August 25, 2015, Batista was no longer receiving breathing treatments.

-9-

Amendment claim of deliberate indifference, he claims the Medical Defendants failed to properly house him following his kidney stone surgery which resulted in him contracting bronchitis; they prescribed him medication to which he is allergic; and failed to provide him pain medication. (*Id.*, ECF p. 2). The Medical Defendants' Reply brief (Doc. 60) argues that Batista's grievance focused strictly on Sgt. Williams' actions of June 16-17, 2015, and not the actions of any of the Medical Defendants. They also argue Batista improperly attempts to amend his Complaint against them via his opposition brief. (*Id.*)

Pursuant to the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, ___ U.S. ___, ___, 136 S.Ct. 1850, 1858, 195 L.Ed.2d 117 (2016). The Supreme Court has explained that "[e]xhaustion of administrative remedies serves two main purposes." Woodford v. Ngo, 548 U.S. 81, 89, 126 S.Ct. 2378, 2385, 165 L.Ed.2d 368 (2006).

> First, exhaustion protects administrative agency authority. Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures.
>
> Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.

*Id.* (internal quotations and citations omitted).

The exhaustion requirement of the PLRA is one of "proper exhaustion." *Id.*, 548 U.S. at 84, 126 S.Ct. at 2383.  This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." (*Id.*)  The "filing [of] an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. (*Id.*)  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  Further, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).  The Supreme Court has clearly stated that "there is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 212, 127 S.C. 910, 918-19, 166 L.Ed.2d 798 (2007).  Finally, "inmates complaining about prison conditions [must] exhaust prison grievance remedies before initiating a lawsuit."  *Jones v. Bock*, 549 U.S. 199, 204, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); *see also Strickengloss v. State Corr. Inst. at Mercer*, 531 F. App'x 193, 194 (3d Cir. 2013)(nonprecedential)(inmates required to exhaust administrative remedies prior to filing suit); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006)(non-precedential)(noting "unanimous circuit court consensus" that prisoner cannot fulfill the exhaustion requirement after filing the complaint).

As exhaustion is a precondition for bringing suit and, as such, it is a "'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" *Small v. Camden Cnty.*, 728 F.3d 265, 270 (3d Cir. 2013) (emphasis in original) (citations omitted). Accordingly, "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id.* at 271.

A prisoner is not required to allege that administrative remedies have been exhausted. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. (*Id.*) As such, it must be pled and proven by the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

Batista claims to have properly exhausted all claims included in his Complaint via grievance 572324. *See* Doc. 1, ¶ 31; Doc. 1-1, ECF pp. 1-2. He does not claim to have filed any other grievance relative to the Medical Defendants or his health care. Thus for purposes of this motion to dismiss, we examine the issue(s) presented in this single grievance.

Batista filed grievance 572324 on June 17, 2015. He specifically complains that Sgt. Williams interfered with his physician-prescribed medical care on June 16-17, 2015. As relief, he sought only for Sgt. Williams to "be h[e]ld accountable" if he "is found responsible for any wrongdoing." (Doc. 1-1, ECF p. 2). While he notes that he was prescribed breathing treatment, Batista does not indicate in any way that his grievance also addresses the Medical Defendants' alleged failures in their treatment of him. This

conclusion is supported by examining Batista's own language when corresponding with others concerning this grievance. Batista himself refers to his grievance as "against Sergeant Williams," (*Id.*, ECF p.14) and "against Sgt. Williams for intentionally interfering with access to prescribed, ordered treatment by the Doctor or Physician, breathing treatment on four different times." (*Id.*, ECF p. 15).

Additionally, his grievance appeals to Supt. Eckhard (*Id.*, ECF pp. 4-5) and to SOIGA (*Id.*, ECF pp. 7-8) do not reference any of the Medical Defendants, complain of their care of him at any time or suggest that he approached any of them concerning Sgt. Williams' alleged interference with their prescribed care. Batista's grievance and appeals are focused strictly on the actions of Sgt. Williams. Nothing in grievance 572324 relates to the Medical Defendants post-operative care or housing of Batista. There is no mention of his receipt of medication that he claims the Medical Defendants knew, or should have known, he was allergic to.

Batista's argument that his grievance also challenged the actions of the Medical Defendants is unsupported. Affording notice to prison officials of alleged wrongdoing is one of the primary purposes underlying the PLRA's exhaustion requirement. Batista never brought to the Medical Defendants' attention his concerns for their failure to properly treat his post-operative pain or other care provided to him. Grievance 572324 only provided notice of Sgt. Williams alleged interference as to Batista's prescribed breathing treatments during a very limited time frame, June 16 and 17, 2015. No other medical issues or individuals are addressed in the grievance. Batista deprived the Medical Defendants of

-13-

the ability to correct or otherwise address his challenges to their medical care prior to the initiation of this lawsuit.  The PLRA clearly precludes his action against them based on this failure.  The Medical Defendants (Dr. Kollman, PA Gomes and PA McConnell) are entitled to dismissal of Batista's Eighth Amendment claims of deliberate indifference to his serious medical needs due to his failure to exhaust his available administrative remedies on these claims.

V.     *Conclusion*

For the reasons set forth above, Batista's claims against Dr. Kollman, PA Gomes and PA McConnel will be  dismissed.  Further, because Batista failed to exhaust his available administrative remedies as to his Eighth Amendment claims, any further amendment of the Complaint pertaining to the Medical Defendants would be futile.  Accordingly, we will not grant Batista leave to file an amended complaint as to these defendants.  *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012)(nonprecedential).

An appropriate order follows.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date:  August 30, 2016

-14-