**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSÉ BATISTA,** | : | **1:15cv1805** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **J.A. ECKARD, et al.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

## I.    Background[1]

Plaintiff José Batista ("Batista" or "Plaintiff"), an inmate at the

Huntingdon State Correctional Institution ("SCI-Huntingdon"), in

Huntingdon, Pennsylvania, filed this civil rights action alleging that

Sergeant ("Sgt.") K. Williams violated his First and Eighth Amendment

rights by denying him access to physician prescribed medical care and

then issuing him a misconduct in retaliation for his filing of a grievance.

(Doc. 1, Compl.)   He also claims Superintendent ("Supt.") J.A. Eckard and

_____

[1] On February 5, 2018, this matter was reassigned from the Honorable William W. Caldwell to the undersigned.

Unit Manager ("UM") K. Granlund violated his Eighth Amendment rights by failing to investigate his grievance concerning Sgt. Williams' interference with his medical care.  (Id.)

Presently before the Court is Defendants' motion for summary judgment, as well as their statement of material facts, supporting brief and exhibits.  (Docs. 97 – 99).  Plaintiff filed a brief in opposition to Defendants' motion for summary judgment and supporting exhibits.  (Doc. 102).  Defendants did not file a reply brief.  Accordingly, this matter is ripe for disposition.

For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

## II.     Procedural History

On September 11, 2016, José Batista filed the present action alleging Defendants' deliberate indifference to his medical needs and Sgt. William's issuance of a retaliatory misconduct.  (Doc. 1, Compl.)  Batista named two groups of Defendants, each represented by separate counsel.  The first group, the Medical Defendants, consisted of contract medical providers employed at SCI-Huntingdon (Dr. Kollman, Physician Assistant (PA) McConnell and PA Gomes).  The second group is comprised of the moving

Defendants who are employed by the Pennsylvania Department of Corrections (DOC) working at SCI-Huntingdon (Supt. Eckard, UM Granlund and Sgt. Williams). The Court will refer to this group as the DOC Defendants.

On January 27, 2016, the Medical Defendants moved to dismiss all Eighth Amendment claims against them based on Batista's failure to exhaust his available administrative remedies. (Doc. 47, Med. Defs.' Mot. to Dismiss). February 5, 2016, the DOC Defendants filed an Answer and Affirmative Defenses to the Complaint. (Doc. 51, Answer).

On August 30, 2016, the Honorable William W. Caldwell granted the Medical Defendants' motion to dismiss. (Doc. 84, Order). Following the close of discovery, the DOC Defendants filed their motion for summary judgment. (Doc. 97, DOC Defs.' Mot. for Summ. J.).

### III.  Summary Judgment Standard of Review

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue as to any material fact and the movant is entitled

to judgment as a matter of law." Pearson v. Prison Health Serv., 850 F.3d 526, 533 (3d Cir. 2017).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 2509 - 10, 91 L.Ed.2d 202 (1986).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) (internal citations omitted).  A fact is "material" if it might affect the outcome of the suit under the applicable law. Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006).  Where contradictory facts exist, the court may not engage in credibility determinations or weigh the evidence, all facts and reasonable inferences are viewed in the light most favorable to the non-moving party.  Pearson, 850 F.3d at 533 - 34.

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record that demonstrate the absence of a genuine issue of material fact.  Santini v. Fuentes, 795 F.3d 410 (3d Cir.

2015) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) – (B).  To withstand summary judgment, the non-moving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (citation omitted); see also Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000).  The non-moving party cannot rest on speculation and conjecture when opposing a motion for summary judgment.  In re Wellbutrin SL Antitrust Litigation Indirect Purchaser Class, 868 F.3d 132, 167 (3d Cir. 2017).  As such, the non-moving party cannot satisfy the summary judgment burden with an affidavit or declaration that sets forth opinions or conclusions rather than supported facts.  Gonzalez v. Sec'y. of Dept. of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012).  Unsubstantiated arguments made in briefs are not evidence considered by the court.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249, 106 S.Ct. at 2511. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## IV. Statement of Undisputed Material Facts[2]

### A. Parties

Batista was housed at SCI-Huntingdon at all times relevant to this action. (Doc. 98, Defs.' Statement of Material Facts ("DSMF"), ¶ 5). James Eckard, now retired, was the Superintendent of SCI-Huntingdon at all times relevant to this lawsuit. (DSMF ¶ 2). Kurt Granlund, now retired, was a Unit Manager at SCI-Huntingdon at all times relevant to this lawsuit.

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." Pa. M.D. Local Rule 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issue of trial. See Id. While Batista filed a brief in opposition to Defendants' motion for summary judgment, he did not file a response to Defendants' statement of material facts. See Doc. 102. Batista did include his own statement of facts in his opposition brief. (Id.) Thus, where Batista properly supports his facts and they create a genuine issue of material fact, the Court will consider them for the purposes of deciding Defendants' motion. Otherwise, the Court deems the facts set forth by Defendants to be undisputed. See Pa. M.D. Local Rule 56.1.

(DSMF ¶ 3).  Kerry Williams was a Sergeant at SCI-Huntingdon at all times relevant to this action.  (DSMF ¶4).

### B.    June 16 – 17, 2015, Day 1 & 2 of Treatment

On June 16, 2015, a SCI-Huntingdon physician prescribed Batista breathing treatments for his Bronchitis.  The physician directed that Batista receive four breathing treatments a day (7:00 a.m., 11:00 a.m., 3:00 p.m., and 6:00 p.m.) for one week.   (DSMF ¶¶ 6 – 8).  Batista's breathing treatments were provided in the medical unit.

On June 16, 2015, the first day of his weeklong treatment, Batista received breathing treatments at 9:30 a.m. and 11:00 a.m.  (DSMF ¶ 9).  At 3:00 p.m. Batista, who was in his housing unit, asked Sgt. Williams to write him a pass to allow him to go to the medical unit for his next breathing treatment.  (DSMF ¶  10).  As Batista's name was not on the "call-out sheet," and there was no pass issued by the medical department authorizing Plaintiff to visit the medical unit at that time, Sgt. Williams denied Batista's request.  (DSMF ¶ 11).  The same scenario occurred later that evening when Batista again sought a pass from Sgt. Williams to attend his 6:00 p.m. breathing treatment.  (DSMF ¶ 14).

The following morning, June 17, 2015, Batista did not report to sick call after missing his 3:00 p.m. and 6:00 p.m. breathing treatments the night before.  (DSMF ¶ 15).  However, at morning pill line he told a nurse that a sergeant on his unit would not allow him to leave the unit to receive his evening breathing treatments.  (DSMF ¶ 16).  The nurse said she would look into the matter.  (DSMF ¶ 17).  Later that morning Batista went to the medical unit twice (7:00 a.m. and 11:00 a.m.) to receive breathing treatments. (DSMF, ¶ 18).  As the medical unit did not provide him with a pass, the morning sergeant on his unit issued him one.  (DSMF ¶ 20.) While present in the medical unit Batista never alerted staff that he missed his 3:00 p.m. and 6:00 p.m. breathing treatments on June 16, 2015. (DSMF ¶ 19).  Similarly, he did not tell medical staff that he did not have an appropriate pass from them authorizing his attendance at the medical unit four times a day for his treatments.  (DSMF ¶ 20).

At 3:00 p.m. Batista approached Sgt. Williams requesting a pass to go to the medical unit for his third breathing treatment of the day.  (DSMF ¶ 21).  Sgt. Williams advised that if Plaintiff had a medical pass he could go to the medical unit for his breathing treatment.   (DSMF ¶ 22).  After Batista could not locate a pass, he asked Sgt. Williams to issue him one.  (DSMF ¶ 23).  Sgt. Williams directed Batista back to his cell.  (DSMF ¶ 24).

At dinner that evening, Batista approached Lt. Dunkle (non-defendant) concerning Sgt. Williams' failure to permit him to go to the medical unit to receive his breathing treatments. (DSMF ¶ 25). After briefly leaving the dining hall, Lt. Dunkle returned and advised Batista that a nurse would call the unit to let staff know he could go to the medical unit for his breathing treatments. (DSMF ¶ 26).

Around 6:00 p.m., Batista advised Sgt. Williams that a nurse should be calling the unit about his breathing treatments. (DSMF ¶ 27). Sgt. Williams advised Batista that if he did not have a pass, he could not go to the medical unit. (DSMF ¶ 28). When Batista did not find a pass, he again asked Sgt. Williams to issue him one. Sgt. Williams told Batista he would receive a misconduct if he asked for a pass again and was out of his cell. (DSMF ¶ 30).

### C. June 18 – 23, 2015, Balance of Breathing Treatments

The remainder of the week, June 18 – 23, 2015, Batista received passes from the medical department and received all of his breathing treatments. (DSMF ¶ 32). Sgt. Williams did not object to, or stop, Batista from receiving his breathing treatments during this time. (DSMF, ¶ 33).

### D.    Grievance No. 572324

On June 17, 2015, Batista filed Grievance No. 572324 alleging Sgt. William's intentional interference with his medical treatment.  (DSMF ¶ 31; see also Doc. 99-4, pp. 8 - 9).  The institution's grievance coordinator (non-defendant) received the grievance on June 22, 2015.  (Doc. 99-4, p. 10). UM Granlund, after interviewing Sgt. Williams concerning the event, denied the grievance on July 9, 2015.  (Id., p. 7).  Superintendent Eckard upheld the initial grievance response on July 30, 2015.  (Id., p. 4). On August 25, 2015, the Chief Grievance Officer denied Batista's grievance appeal at Final Review.  (Id., p. 2).

### E.    July 1, 2015 - Misconducts B864592 and B864594

On July 1, 2015, while in his housing unit, Batista heard an announcement for yard.  (DSMF ¶ 36).  Batista had the option of attending two different exercise yards, A or C.  The C yard has weights while A does not.  Batista thought the officer simultaneously called for both A and C yard. (DSMF ¶¶ 39 – 41).  He returned to his cell and dressed for yard.  (DSMF ¶ 38).  Batista started toward C yard but turned around when he discovered the officer only called for those attending A yard.  (DSMF ¶ 42).  Plaintiff asked the officer at the desk if the call was also for C yard.  The officer told

Batista to return to his cell and wait for the call.  (DSMF ¶ 43).  Plaintiff did

not like the desk officer's "attitude" when responding to his inquiry.  (DSMF

¶¶ 44 – 45).  After exercising in C yard, Batista approached the desk to

obtain the officer's name to file a grievance.  (DSMF ¶ 47).  Sgt. Williams

was standing behind the officer at that moment and asked Batista, "What's

your problem?"  (DSMF ¶ 48).  Batista explained he wanted the officer's

name that "disrespected [him] earlier."  (DSMF ¶ 49).  Plaintiff advised that

if Sgt. Williams would not provide the officer's name he would find out at

yard.  (DSMF ¶¶ 50 – 51).  As Batista walked out of the unit toward the

yard, Sgt. Williams followed him and ordered him to return to his cell.

(DSMF ¶ 52).  Batista looked back but did not know to whom Sgt. Williams

was speaking. (DSMF ¶ 53).  Sgt. Williams told Batista to go back to his

cell.  (DSMF ¶ 54).

Batista later received two misconducts, one from Sgt. Williams

(B864594) and one (B894592) from the desk officer (non-defendant).  See

also Doc. 99-5, pp. 3 and 9).  The desk officer charged Batista with refusing

to obey an order and presence in an unauthorized area.  (Id., p. 3).  The

officer noted that Batista received an early misconduct on June 12, 2015

for going to yard while on "L5 Layin".  (Id.)  At his misconduct hearing,

Batista requested the hearing examiner review a video tape of his

exchange with the desk officer. Upon doing so, the hearing examiner found Batista guilty of both charges. (Id., p. 2). As a result, the hearing examiner ordered Batista serve thirty days under disciplinary custody in the institution's Restricted Housing Unit (RHU). (Id.)

Sgt. Williams charged Batista with using abusive or inappropriate language to an employee, refusing to obey an order, and presence in an unauthorized area. (Id., p. 9). At Batista's request the hearing examiner reviewed the video in connection with misconduct B864594 issued by Sgt. Williams. (Id., p. 8). The hearing examiner dismissed one charge: using offensive language. However, she found Batista guilty of refusing to obey an order and presence in an unauthorized area. (Id.) The hearing examiner sanctioned Batista to thirty days disciplinary custody in the RHU, consecutive to his earlier disciplinary sentene. (Id., pp. 2 and 8). When released from the RHU Batista "no longer has any problems" with Sgt. Williams. (DSMF ¶¶ 61 - 62).

## V. Discussion

### A. Supt. Eckard's and UM Granlund's Lack of Personal Involvement

To successfully state a § 1983 claim, a plaintiff must allege:  (1)  the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived the plaintiff of rights, privileges, or immunities secured by the laws of the Constitution of the United States.  Rehberg v. Paulk, 566 U.S. 356, 360, 132 S.Ct. 1497, 1501, 182 L.Ed.2d 593 (2012).

Because vicarious liability is inapplicable to § 1983 suits, plaintiff must plead each defendant's personal involvement in the alleged unconstitutional actions.  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005); Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Supervisor liability under respondeat superior is not available in a § 1983 claim.  See Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016).  However, under limited circumstances a supervisor may be liable for the acts of a subordinate.  A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  A supervisor's "personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."

Argueta v. U.S. Immigration & Customs Enf't, 643 F.3d 60, 71 (3d Cir. 2011) (quoting Rode, 845 F.2d at 1207).  A supervisor may also be liable if he knew of, and tolerated, ongoing misbehavior by subordinates.  Baker v. Monroe Twp., 50 F.3d 1186, 1190 - 91 & n.3 (3d Cir. 1995).

> But where actual supervisory authority is lacking, mere inaction, in most circumstances, does not reasonably give rise to a similar inference [of acquiescence].  As a general matter, a person who fails to act to correct the conduct of someone over whom he or she has no supervisory authority cannot fairly be said to have "acquiesced" in the latter's conduct.

Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).  "[A]nd a higher-ranked individual does not necessarily have supervisory authority over a lower-ranked employee."  Jennings-Fowler v. City of Scranton, 680 F. App'x. 112, 118 n.23 (3d Cir. 2017) (nonprecedential) (citing Robinson, 120 F.3d at 1294).

Allegations that prison officials and administrators responded inappropriately or failed to respond to a prisoner's complaint or official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct.

See Davis v. Samuels, 608 F. App'x 46, 48 – 49 (3d Cir. 2015) (prison official's after-the-fact involvement in investigating or ruling on grievance, or grievance appeal, is insufficient to demonstrate that official's personal involvement in the alleged constitutional violation); Rode, 845 F.2d at 1207 – 08 (same).

Supt. Eckard and UM Granlund claim they are entitled to summary judgment in their favor due to Batista's failure to allege their personal involvement in the underlying alleged unconstitutional conduct, the interference with his evening breathing treatments on June 15 – 16, 2015. They argue that Batista's claim against them is strictly limited to their review of Batista's administrative remedy, Grievance No. 572324. (Doc. 99, Defs.' Summ. J. Br., pp. 18 – 20; see also Doc. 99-1, pp. 18 and 21). Plaintiff confirms his theory of liability against these Defendants in his opposition brief.

> Defendants clearly learned about the violations through appeals made by plaintiff through the grievance system and appeals through disciplinary decisions and through Request Slips (Form 135A) and through reports of the filing of plaintiff's lawsuit.

(Doc. 102, Pl.'s Summ. J. Opp'n Br., ¶ 2.) Batista does not aver or produce any evidence that either Supt. Eckard or UM Granlund knew of Sgt. Williams' alleged unconstitutional conduct at the time it was occurring, or

otherwise directed or acquiesced to Sgt. Williams' decision to stop Batista

from leaving his housing unit without a medical pass on June 16 and 17,

2015.  In addition, it is undisputed Sgt. Williams' alleged unconstitutional

behavior of interfering with his breathing treatments ceased on June 18,

2015.  (DSMF ¶ 33).  UM Granlund did not receive Batista's grievance until

sometime after June 22, 2015.  (Doc. 99-4, p. 10).  UM Granlund filed his

initial review response on July 9, 2015.  (Id., p. 7).  Supt. Eckard filed his

appeal response on July 30, 2015.  (Id., p. 4).  Thus, Defendants'

knowledge of the incident was accrued, by Batista's own admission, after

Sgt. Williams ceased prohibiting Batista from receiving his breathing

treatments.  Likewise, Batista fails to assert either Supt. Eckard's or UM

Grandlund's personal involvement, simultaneous knowledge or

acquiescence in Sgt. Williams' July 1, 2015, issuance of an alleged

retaliatory misconduct.[3]  (DSMF ¶ 56).

Consequently, based on the record before the Court, the Court will

grant Defendants' summary judgment motion with respect to all claims

lodged against Supt. Eckard and UM Granlund based on Plaintiff's failure

---

[3]  Although Batista provides Supt. Eckard's post-incident review of a different
misconduct report (B864563) issued to him by Sgt. Williams, that misconduct was
issued in September 2015 and unrelated to the events plead in the Complaint.

to allege their personal involvement in either his First or Eighth Amendment claim.

### B. Sgt. Williams' alleged Interference with Batista's Prescribed Breathing Treatments

Batista alleges the Sgt. Williams violated his Eighth Amendment right to be free from cruel and unusual punishment by interfering with or denying him two prescribed breathing treatments the evenings of June 15 – 16, 2015. (Doc. 1, Compl.)

The Eighth Amendment "requires prison officials to provide basic medical treatment" for those "incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). To establish a medical claim based on the Eighth Amendment, an inmate must allege (1) acts or omissions by prison officials sufficiently harmful (2) that show deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The inmate must satisfy this two-part conjunctive test. Without the requisite mental state, a prison official's conduct alone will not constitute deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 837-38,

114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009).  Where prison officials know of the prisoner's serious medical need, deliberate indifference is found if the official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197.  In order to find deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979; see also Beers–Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001).

A prison official "intentionally denying or delaying access to medical care or intentionally interfering with [medical] treatment once prescribed can show deliberate indifference. Estelle, 429 U.S. at 104-05, 97 S.Ct. at 291.  A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is ... so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)

(citations omitted).  Persistent severe pain qualifies as a serious medical need.  "If 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment."  Id. at 347 (3d Cir. 1987) (quoting Estelle, 429 U.S. at 103, 97 S.Ct. at 290).

There is no dispute that a physician prescribed Batista breathing treatments four times a day, between June 16 and June 23, 2015, for his Bronchitis.  It is also undisputed that the medical department did not issue Batista a pass advising security staff of his need to come to the medical unit four times a day for a week.  On the first day of his treatment, June 16, 2015, Batista learned Sgt. Williams would not allow him to go to the medical unit without a medical pass.  Batista did not sign up for sick call on June 17, 2015 after missing his two breathing treatments.  On the second day of treatment, Batista failed to notify medical staff of his need for a proper medical pass to attend his treatments.  Additionally, Plaintiff did not notify medical staff that he missed his afternoon breathing treatments on June 16, 2015 because he lacked the proper pass.  Batista had two opportunities on June 17, 2015 to remove any impediments to his access to further breathing treatments when he went to the medical unit for his

morning treatments by alerting staff to his pass problem. Moreover, Batista

does not advance any competent evidence to suggest Sgt. Williams knew

he suffered from a serious medical condition and that by denying him

access to the medical unit on June 15 and June 16, 2015, placed him at

substantial risk of harm. Batista has not demonstrated he suffered any, let

alone serious, health consequence because of Sgt. Williams' alleged

interference with his prescribed breathing treatments. He received two

morning treatments on June 15 and 16, 2015, and four treatments a day for

the next six days. Against this backdrop, Plaintiff's own self-serving,

unsupported and conclusory assertions in his declaration (Doc. 102-3)

about what he believes the appropriate response to his request to go to the

medical unit should have been is insufficient to create a triable issue of

whether Sgt. Williams was deliberately indifferent to his serious medical

needs. See Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992) (at

summary judgment non-moving party cannot "merely rely on conclusory

allegations in [its] pleadings or in a memorandum and briefs"); Robertson v.

Allied Signal, Inc., 914 F.2d 360, 382 – 83 n. 12 (3d Cir. 1990) (Mere

conjecture or speculation by the non-moving party in summary judgment

will not provide a basis upon which to deny the motion). Accordingly, the

Court will grant Sgt. Williams' motion for summary judgment as to Batista's Eighth Amendment medical claim.

### C. Batista's Retaliation Claim against Sgt. Williams

It is well-settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Allah v. Seiverling, 229 F.3d 220, 224 - 25 (3d Cir. 2000)). Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

A prisoner alleging a First Amendment retaliation claim must show that "(1) he was engaged in constitutionally protected conduct, (2) 'he suffered some adverse action at the hands of prison officials,' and (3) 'his constitutionally protected conduct was a substantial or motivating factor in the decision' to take action." Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Rauser, 241 F.3d at 333) (internal quotations omitted). The filing of a grievance against prison officials constitutes protected conduct. See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citing

Mitchell, 318 F.3d at 530).  "The test for adverse action … is not whether *this* plaintiff would be deterred, but rather whether a person of ordinary firmness would be deterred" from exercising his constitutional rights. Martin v. Gearhart, No. 16-3839, 2017 WL 4570705, at *5 (3d Cir. Oct. 13, 2017).  Plaintiff can establish the third element of a prima facie case of retaliation with evidence of: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Watson, 834 F.3d at 424.  "[T]he timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."  Id.

Once an inmate makes a <u>prima</u> <u>facie</u> case, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334; <u>see</u> <u>also</u> Carter v. McGrady, 292 F.3d 152, 154 (3d Cir. 2002) (retaliation claim fails where prison officials would have disciplined inmate for policy violations notwithstanding his protected activity).

Batista claims that Sgt. Williams issued him a false misconduct on July 1, 2015, in retaliation for his filing of Grievance No. 572324 on June

17, 2015.  The DOC Defendants contend that even if Plaintiff demonstrated a prima facie retaliation claim, the hearing examiner found there was sufficient evidence to find him guilty of the misconduct.

"In general, 'most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence' because courts afford prison officials 'great deference' in the context of prison disciplinary proceedings.  Whitehead v. Wetzel, No. 17-2637, 2017 WL 6492638, *5 (3d Cir. Dec. 19, 2017) (quoting Watson, 834 F.3d at 425).  When evaluating claims of retaliatory discipline, courts must consider "'the quantum of evidence' of the misconduct to determine whether the prison official's decision to discipline an inmate for his violations of prison policy was within the broad discretion [the Courts] must afford them."  Watson, 834 F.3d at 425.  Prison officials are entitled to summary judgment for disciplining a prisoner, even if their actions were motivated by animus, as long as the prisoner's offenses "were so clear and overt" such that there was no genuine issue of material fact that the officials' actions were reasonably related to legitimate penological interests.  Carter, 292 F.3d at 158 - 59.

Here, Sgt. Williams charged Batista with refusing to obey an order, presence in an unauthorized area and using abuse or inappropriate

language toward staff.  (Doc. 99-5, p. 9).  In the misconduct report, Sgt.

Williams states he witnessed Batista yelling at the desk officer and failed to

cease his behavior when given a direct order to stop yelling and return to

his cell.  (Id.)  Plaintiff then refused to return to his cell and started to walk

off the unit.  (Id.)  Sgt. Williams followed Batista and ordered him back to

his cell.  Batista ultimately complied with Sgt. Williams' order and returned

to his cell.  (Id.)

At his misconduct hearing, Batista requested the hearing examiner to

review the unit video of the incident.  The hearing examiner watched the

video and made the following observations:

> Inmate comes out of his cell at approximately
> 14:19:35 and walks toward the desk, pointing at CO
> Verbitskey.  He leans over the desk and continues
> talking to CO Verbitskey.  Sgt. Williams is behind
> the desk and leans towards the desk.  Sgt. Williams
> the[n] points in the direction of [Batista's] cell, but
> [Plaintilff] walks off the block.  Sgt. Williams walks
> after him.  Inmate is walking towards the Center and
> gestures towards the corridor.  He comes back onto
> the block.

(Doc. 99-5, p. 8).  Based on video tape of the incident the hearing examiner

found Batista failed to obey multiple orders to return to his cell and went to

the Center without permission.  The hearing examiner considered Plaintiff's

presence in the Center without permission to validate the presence in an

unauthorized area charge.  Thus, regardless of Sgt. Williams' intent when

issuing the misconduct, the summary judgment record before the Court, the

evidence of Batista's violation of prison rules was "clear and overt" such

that there was no genuine issue of material fact that Sgt. Williams' actions

were reasonably related to legitimate penological interests.  Carter, 292

F.3d at 158 – 59.  Accordingly, with respect to Batista's retaliation claim,

the Court will enter summary judgment in favor of Sgt. Williams.

An appropriate order will enter.

**BY THE COURT:**

**Dated:  March 22,  2018**          **s/ James M. Munley**

**JUDGE JAMES M. MUNLEY**
**United States District Court**